```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| ROSE COZZENS,<br><br>     Plaintiff,<br><br>     v.<br><br>WAL-MART STORES EAST, LP; JOHN DOE(S) I-X,<br><br>     Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 14-7150 (JBS/JS)<br><br>**OPINION** |

APPEARANCES:

John D. Borbi, Esq.
Marianne Bryant, Esq.
Borbi, Clancy & Patrizi, LLC
999 Route 73 North, Suite 103
Marlton, NJ 08053
     Attorneys for Plaintiff

Melissa Marie Briggs, Esq.
Taisha Kristina Tolliver, Esq.
McDonnell & Associates, P.C.
500 Route 70 West
Cherry Hill, NJ 08002
-and-
Patrick J. McDonnell, Esq.
McDonnell & Associates, P.C.
Metropolitan Business Center
860 First Avenue
Suite 5B
King of Prussia, PA 19406
     Attorneys for Defendant

**SIMANDLE, Chief Judge:**

## I.   INTRODUCTION

In this case, Plaintiff Rose Cozzens seeks compensation for an injury sustained after allegedly falling over a rug at the Vineland, New Jersey location of Defendant Wal-Mart Stores East, LP ("Wal-Mart"). Before the Court is Defendant Wal-Mart's motion for summary judgment. For the reasons that follow, the Court will deny Defendant's motion.

## II.   BACKGROUND

The facts in this case are straightforward. On February 25, 2014, Plaintiff Rose Cozzens walked into the Pharmacy entrance of the Vineland, New Jersey Wal-Mart store and tripped and fell on her knee over a wrinkled and untaped weather rug in the store's entrance vestibule. (Defendant's Statement of Material Facts ("Def. SMF") [Docket Item 21] ¶ 9; Rose Cozzens Deposition ("Cozzens Dep.") [Def. SMF Ex. B, Docket Item 21-2] at 30:7-11.) Plaintiff was using a cane at the time of her accident. (Cozzens Dep. at 32:20-33:14.) The area was well-lit at the time. (Cozzens Dep. at 31:14-22.) Plaintiff recalls seeing the rug before her accident, but does not recall noticing anything unusual or specific about it before or after she fell. (Id. at 32:10-14.) Video surveillance of the vestibule appears to show that the wrinkle over which Plaintiff tripped may have been created by another customer's shopping cart approximately five minutes before Plaintiff's accident. (Store Video [Def. SMF Ex.

E].) Surveillance does not show any Wal-Mart employees in the vestibule in the few minutes preceding Plaintiff's accident. (Id.) Plaintiff was assisted by another customer after the accident until Anita Ham, a customer service supervisor at Defendant's Vineland Store, and Linda Repp, a manager, were called to the vestibule. (Cozzens Dep. at 36:6-18, 37:16-38:25; Anita Ham Deposition ("Ham Dep.") [Def. SMF Ex. F, Docket Item 21-2] at 22:23-24:2.) That customer and Plaintiff both filled out statements for Wal-Mart noting that Plaintiff fell on the rug and hit her knee. (Def. SMF Ex. C & D.) Plaintiff declined Ms. Ham and Ms. Repp's offer to call an ambulance (Ham Dep. at 28:21-29:1) and drove herself home. (Cozzens Dep. at 46:17-22.) Later that evening, Plaintiff called an ambulance to take her to the hospital when the pain in her knee intensified. (Id. at 46:23-47:5.) Plaintiff spent time in the hospital and a rehabilitation facility before going home with a cast and a walker. (Id. at 51:3-15.)

Ms. Ham testified at her deposition that it is Wal-Mart's policy to place weather rugs in store entrances when there is wet or inclement weather. (Ham Dep. at 20:1-21:7.) Wal-Mart's customer service supervisors "periodically through the day" check to ensure that there is "no debris [or] wet floors" in the vestibule. (Id. at 17:7-23.) There is no particular time that customer service supervisors check the vestibule and no

3

documentation is kept logging when employees check the area for hazards. (Id. at 18:14-19:2.) This practice is apparently consistent with Wal-Mart's Standard Operating Procedure regarding Safety Sweeps. (Def. SMF Ex. G at 1.)

It is the Vineland Wal-Mart store's policy to tape down the perimeter of weather rugs like the one on which Plaintiff fell. (Ham Dep. at 39:13-19.) The maintenance department is supposed to tape the mats every time they are placed in the vestibule, although some managers allegedly do not insist that tape be used. (Id. at 41:7-15, 42:1-12.) There is conflicting evidence in the record as to whether these rugs routinely present a tripping hazard for Wal-Mart customers; Ms. Ham testified at her deposition that there has never been a problem or customer complaint "that [she's] aware of" with the rugs (id. at 40:10-20), while Russell Mackell, a manager at the Vineland Wal-Mart store, testified that there have been problems with shopping carts "kicking the mats up and moving them" and that the rugs sometimes move even when the perimeter is taped. (Russell Mackell Deposition ("Mackell Dep.") [Plaintiff's Counter-Statement of Material Facts ("Pl. CSMF") Ex. B] at 39:10-11, 39:23-25). The record is not clear when the store instituted its tape policy. (Ham Dep. at 39:21-40:9.) Plaintiff, as the party opposing summary judgment, is entitled to the reasonable

4

inference that taping helps to hold the weather mat in place to prevent its movement when traversed by customers and carts.

Video surveillance of the entrance vestibule appears to show that the rug was not taped down at the time of Plaintiff's injury. (Def. Ex. E; see also Pl. CSMF ¶ 40, Def. Response to Pl. CSMF ¶ 40.)

This case was originally filed in the Superior Court of New Jersey, Cumberland County and Defendant timely removed to this Court. [Docket Item 1.] After the parties exchanged discovery, Defendant filed the instant motion for summary judgment. [Docket Item 21.] Plaintiff filed an opposition brief [Docket Item 24] and Defendant filed a reply. [Docket Item 25.] The Court will decide this motion without holding oral argument pursuant to Fed. R. Civ. P. 78.

### III. STANDARD OF REVIEW

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for

summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The non-moving party "'need not match, item for item, each piece of evidence proffered by the movant,'" but must simply present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. Boyle v. Cnty. of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Anderson, 477 U.S. at 252).

## IV.  DISCUSSION

In a negligence action under New Jersey law, a plaintiff must establish "(1) that the defendant owed a duty of care; (2) that the defendant breached that duty; (3) actual and proximate causation; and (4) damages." Fernandes v. DAR Development Corp., 119 A.3d 878, 885-86 (N.J. 2015). In this case, as a commercial premises owner, Defendant owed Plaintiff, a business invitee, a duty to "guard against any dangerous conditions on the property that the owner either knows about or should have discovered, and

to conduct a reasonable inspection to discover latent dangerous conditions." <u>Stelluti v. Casapenn Enters., LLC</u>, 1 A.3d 678, 691 (N.J. 2010) (citing <u>Hopkins v. Fox & Lazo Realtors</u>, 625 A.2d 1110 (N.J. 1993)) (internal citations and punctuation omitted). Proof of a fall alone is insufficient to create an inference of negligence; to succeed in a premises negligence action, a plaintiff must establish that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident. <u>Nisivoccia v. Glass Gardens, Inc.</u>, 818 A.2d 314, 316 (N.J. 2003). Constructive knowledge may be attributed where a plaintiff establishes that the defendant "had the reasonable opportunity to discover and correct the defect." <u>Prioleau v. Kentucky Fried Chicken, Inc.</u>, 85 A.3d 1015, 1022 (N.J. App. Div. 2014). "Whether a reasonable opportunity to discover a defect existed will depend on both the character and duration of the defect." <u>Id.</u> (citing <u>Brown v. Racquet Club of Bricktown</u>, 471 A.2d 25 (N.J. 1984)).

In this case, Defendant concedes that it owed Plaintiff a duty to guard against hazardous conditions in its entrance vestibule, but takes the position that summary judgment is warranted in its favor because Plaintiff has adduced no evidence that Defendant breached this duty, because no evidence suggests that it knew or should have known about the wrinkle in the weather mat before Plaintiff's accident. Plaintiff argues that

7

summary judgment would be inappropriate because Defendant's lack of actual notice of the hazardous condition does not prove that no breach of duty occurred, because proof of notice is not necessary where, as here, Defendant should have known that dangerous conditions were likely to occur there because of the nature of Defendant's business. In the alternative, Plaintiff argues that summary judgment would be inappropriate because the record does not prove that Defendant had no reasonable opportunity to discover the hazardous condition before Plaintiff's accident, and that the issue of constructive notice is for the fact finder to decide.

Under New Jersey's mode-of-operation rule, a plaintiff is entitled to a rebuttable presumption of negligence, without the burden of proving the premises owner's actual or constructive notice of a hazardous condition, "when a substantial risk of injury is inherent in a business operator's method of doing business." <u>Nisivoccia</u>, 818 A.2d at 317. That rule applies only "to settings such as self-service or a similar component of the defendant's business, in which it is reasonably foreseeable that customers will interact directly with products or services, unassisted by the defendant or its employees." <u>Prioleau v. Kentucky Fried Chicken, Inc.</u>, 122 A.3d 328, 330 (N.J. 2015); see also <u>Lenherr v. Money Organization, Inc.</u>, Case No. 13-4731, 2015 WL 9450828, at *2 (D.N.J. Dec. 23, 2015) ("[T]he New Jersey

8

Supreme Court issued a decision clarifying the scope of the mode-of-operation principle to slip-and-fall cases in establishments that encourage self-service on the part of a customer."). While the inside of Defendant's store might involve self-service features where "customers . . . come into direct conduct with product displays, shelving, [and] packaging," the mode-of-operations rule "applies only to accidents occurring in areas affected by the business's self-service operations." Prioleau, 122 A.3d at 338. There is no evidence in the record showing that there are any self-service features in the entrance vestibule of Defendant's Vineland store; accordingly, Plaintiff is not entitled to a rebuttable presumption of negligence under the mode-of-operation rule.

   Applying the normal duty of care owed by a premises owner to a business invitee, the Court finds that there is a genuine issue of material fact from which a reasonable fact finder could conclude that Defendant had constructive knowledge of the hazard. On the one hand, surveillance video of the Vineland store's entrance vestibule on the date of Plaintiff's injury shows, from two different angles, that a customer's shopping cart created a wrinkle in the edge of the weather rug about five minutes before Plaintiff's injury, and that no Wal-Mart employees were in the area in the interim. [See Def. Ex. E, "OH fall" at 54:49 (wrinkle created) and 1:00:21 (fall) and "Bullet

9

cam fall" at 1:00:21 (fall).] The existence of this tripping hazard for about five minutes before the fall must be viewed in the context of the circumstances. First, this is an entryway area traversed by customers of a large retail store that likely has a high volume of shoppers and carts traversing it. Second, such weather mats are known to move and to cause a ridge that may not be readily apparent to a customer. Third, the mat in question was not taped down at the time of the accident and could thus be found to be more prone to creasing or movement from its normally safe, flat position. Under these circumstances, the Court cannot say, as a matter of law, that Plaintiff could never prove Wal-Mart had constructive knowledge in this five-minute interval. A reasonable fact finder could find that the store personnel had reason to know that this entryway weather mat would be prone to create a dangerous condition, as it had in the past, when not taped down and when traversed by a significant number of customers and carts. It is factually plausible that a reasonable fact finder could find Wal-Mart failed to take reasonable care to secure the mat or keep it under frequent inspection. If so, Wal-Mart would be ascribed with constructive knowledge of the hazard because Wal-Mart had the "reasonable opportunity to discover and correct" a wrinkle of that size on the edge of a weather mat in the time interval here. Prioleau, 85 A.3d at 1022. Reasonable minds may

therefore differ whether Wal-Mart breached its duty to "guard against any dangerous conditions on the property that the owner either knows about or should have discovered, and to conduct a reasonable inspection to discover latent dangerous conditions," Stelluti, 1 A.3d at 691. This Court, in a motion for summary judgment, cannot invade the province of the fact finder where, as here, the weight to be given to the known facts in assessing Wal-Mart's conduct presents a jury question. Accordingly, the Court will deny Defendant's motion for summary judgment.

## V. CONCLUSION

An accompanying Order will be entered.

| | |
|---|---|
| **September 6, 2016** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | Chief U.S. District Judge |