UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

*ROSE COZZENS* : CIVIL NO. *1:14-CV-07150-JBS-JS*

Plaintiff(s), :

v. : **ARBITRATION AWARD**
*WALMART STORES EAST,* **PURSUANT TO LOCAL CIVIL**
*LP et al,* : **RULE 201.1**

Defendant(s). :

:

AND NOW, this *26TH* day of *OCTOBER*, 2016, the undersigned arbitrator having been duly certified and sworn and having heard the above-captioned civil action on *OCTOBER 21*, 2016, in the presence of and on notice to *JOHN D. BORBI* counsel for the plaintiff, *ROSE COZZENS*, and _____, counsel for the defendant,_____, and *TALSHA TOLLIVER*, counsel for *WALMART STORES EAST*;

And the parties having presented such testimony and submitted such pleadings, discovery, reports and other documents as counsel deemed necessary for the Arbitrator's consideration;

The Arbitrator does hereby make the following Arbitration Award pursuant to Local Civil Rule 201.1 in favor of *PLAINTIFF, COZZENS*, and against *DEFENDANT WALMART STORES, EAST*, in the amount of *$70,405.45*.

*EDWIN E. NAYTHONS*
*Edwin E. Naythons*
ARBITRATOR
*U.S.M.J. RETIRED*

NOTICE

**This award will become a final judgment of the court, without the right of appeal, unless a party files with the court a Demand for a Trial De Novo within (30) days (60 days for all parties in actions in which the United States or any employee or agency thereof is a party) after the entry of the arbitration award pursuant to Local Civil Rule 201.1.(h).**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ROSE COZZENS | : | |
| | : | |
| Plaintiff | : | |
| | : | CIVIL NO. 1:14 CV-07150-JBS-JS |
| vs. | : | |
| | : | |
| | : | |
| WALMART STORES, EAST, L.P., ETAL | : | |
| | : | ARBITRATION AWARD |
| | : | PURSUANT TO LOCAL CIVIL |
| Defendant | : | RULE 201.1 |

## ARBITRATOR'S STATEMENT IN SUPPORT OF AWARD

### A.  Liability Findings:

No evidence has been offered by Walmart relating to when, how or the times that inspections were made at the entrance where the mat/rug was located on February 25, 2014. Neither have any logs or reports that are in Walmart's custody that demonstrates who and when the inspections indicated the condition of the mat prior to Plaintiff tripping and falling on the weather mat/rug.

No explanations were offered for the lack of documents noted above. For that reason and those noted above, the Arbitrator is drawing the inference that the wrinkle that caused the fall and injuries sustained was wrinkled <u>prior</u> to the food cart being pushed by a customer five minutes prior to Plaintiff's entering the premises.

Defendant argues that "Walmart associates performed periodic inspections of the vestibule area to check for spills and/or other conditions." However as already indicated no witnesses logs or other inspection data has been forthcoming.

The following day Plaintiff's daughter returned to Walmart and had photographs taken demonstrating that the mat/rug was taped around their edges to the floor.

While Mr. Mackell, the Store Manager, testified that he was aware the customers push shopping carts over the "runners" causing them to "flip up, wrinkle and move" he nevertheless did not produce the documents of prior inspections, the identity of the employee or the number of times inspections were made and noted in the vestibule area.

The Arbitrator is fully cognizant that evidence of a party's subsequent remedial measures (the taping) that if taken before the incident would have made it less likely to occur, is not admissible to prove negligence or culpable conduct in connection with the incident. The rationale for excluding this evidence is based primarily on the policy of encouraging responsible parties to take added safety measures without fear that their actions will be offered as evidence of their liability.

However, evidence of subsequent measures may be received, as here when offered to prove a controverted purpose other than negligence such as ownership, control, the feasibility of precautionary measures or when offered to impeach.

It is of course recognized and accepted as absolute law that actual or constructive knowledge of the dangerous condition that caused the accident is an essential element of the cause of action. *Nisivoccia v. Glass Gardens, Inc.* 175 N.J. 559, 563 (2003). And that constructive notice is the "existence of a condition for such a length of time as reasonably to have resulted in knowledge and correction had the Defendant been reasonably diligent." *Paramenter v. Jarvis Drug Store, Inc.* 48 N.J. Super 507, 510 (app. Div. 1957).

Having found as a fact that the wrinkles in the mat rug existed prior to the entry into Walmart of the shopping cart, the requirement of constructive notice has been satisfied, as owner and operator of the Walmart enterprise, Defendant was responsible for making the common approach into the store safe for the plaintiff, a business invitee, and is liable where, as here, they had constructive notice of the defective and dangerous condition. Had Walmart exercised a reasonable inspection of the vestibule at a time of inclement weather, it would have become aware of the condition but did nothing until Plaintiff's trip and fall to correct a condition over which they had ownership and control.

*Handelman v. Cox*, 39 N.J. 95, 187 A2d 708 (1963) held that the duty of care was one ' to use reasonable care to make the premises, and this includes the duty to make a reasonable inspection to discover defective conditions (at 111 emphasis supplied).

Defendant's counsel in support of Walmart's conduct that it never had an opportunity to correct the wrinkle in the mat, and therefore, no constructive notice is misplaced.

The decision in *Prioleau v. Kentucky Fried Chicken, Inc., et al* decided on September 28, 2015 by the Supreme Court of New Jersey, dealt exclusively with Plaintiff relying on the "mode-of-operation rule".

"If the jury concluded that the accident was caused by rain water tracked into the restaurant by a customer then it could have found liability based only on the mode-of-operation rule. In light of Plaintiff's reliance on that theory, the trial court's erroneous

2

mode of operation charge may well have determined the jury's verdict on the question of liability".

Moreover, the Court states that the mode of operation rule was given twice. The jury was instructed on both of the alternative forms set forth in the model jury charge (civ l) 5.20(11). The mode of operation rule was accordingly overemphasized in the jury instruction as a whole and <u>the two alternative charges presented in succession may have confused the jury.</u>" (Emphasis added)

The Court concluded that it could have come to a different result had it been correctly instructed. <u>The mode of operation charge was not harmless error</u> and Defendant is entitled to a new trial. (Emphasis added)

New Jersey decisions have emphasized foreseeability as the prominent component around which the duty to make the premises safe. "The basis of liability is the foreseeability of harm and the measure of duty is care in proportion to the foreseeable risk". *Butler v. Acme Markets, Inc.* 89 NJ 270, 275, 445 A2d 116 (1982); *Kuzmicz v. Ivy Hill Park Apartments*. Here it was clearly foreseeable that the failure to make reasonable inspections of the mat/rug would cause harm to Plaintiff, a business invitee. The Arbitrator is obliged to conclude that the negligence of Walmart as described was the proximate cause of Plaintiff's injuries hereinafter described.

The issue of Plaintiff's negligence is determined under New Jersey Statutes Annotated Title 2A:15-5.1 that contributory negligence is eliminated as a bar to recovery; comparative negligence to determine damages. "Any damages sustained shall be diminished by the percentage sustained of negligence attributable to the person recovering."

In determining Plaintiff's comparative negligence, the Arbitrator recognizes that Plaintiff is not absolutely required to look down at her feet when walking. But a person must look where she is stepping as the law requires a person exercise reasonable care and diligence when entering or exiting a commercial establishment. Here, Plaintiff was obligated to at least see that a problem with the rug/mat wrinkled partly in an area that was well lighted and not pushing a shopping cart. Her vision was not impaired as she at age 88 was a licensed operator of her automobile. A finding of 30 percent (30%) comparative negligence is found here.

## B. Damage Findings:

As a result of the February 25, 2014 fall, Plaintiff sustained a transverse fracture of the left patella, placed in a knee immobilizer and hospitalized for three (3) days. The fracture healed when she visited her treating physician, Dr. Weisband, on August 20,

3

2014 with right lateral hip pain and right knee pain. Dr. Weisband assessed Plaintiff's condition as sprain of right knee replacement and backing out of gamma nail right hip that he found "not related to the fall" (Emphasis added)

On October 10, 2014, Dr. Catalano, Orthopedic Surgeon, removed a helical blade right hip, one month following Dr. Weisband's study and examination. One April 24, 2015, Plaintiff after having the nail removed on October 10, 2014, sustained a right hip basicervical fracture and spent four (4) days in the hospital.

It is significant that Doctor Catalano who performed the removal of the blade and right hip fracture on October 10, 2014 offered no opinion as to whether the removal of the helical blade was causally related to the February 25, 2014 fall. Only Dr. John Kirby, M.D. who was retained by Plaintiff's counsel offered an opinion on November 13, 2015 with reasonable medical certainty that the fall on February 25, 2014 was related to the removal of right hip hardware.

It should be noted that Dr. Weisband is a D. O. F. A. C. OS. F. A. D. A.O. surgeon who was most familiar with Plaintiff's earlier injuries, fractured right hip and right knee replacement by Dr. Catalano. He noted the backing out of the leg screw protruding 1.5 cm past the greater trochanter, but stated on two (2) occasions that it was not related to the February 25, 2014 fall.

The Arbitrator is impressed with Dr. Weisband's association with Orthopedic Professional Association involved with multiple treatment of sports/joint reconstruction, spine surgery, trauma pain management physiatry, pediatric surgery (Emphasis added).

Dr. O'Dowd, who examined Plaintiff on February 4, 2016, noted that Plaintiff's family physician noted that after the fall, and in the hospital, reflect injury to the left patella but did not reflect any hip or right knee pain at that time; only left knee pain after the fracture and since 2006 had "frequent falls". He concluded that the right hip symptoms on the right knee symptoms are not related directly to the left patella injury.

4

## AWARD

| | |
|---|---|
| Past and future pain and suffering and loss of life's' pleasures | $85,000.00 |
| Less 30% comparative negligence | $25,500.00 |
| Net Recovery | $59,500.00 |
| Medicare Lien | $10,905.45 |
| TOTAL AWARD | $70,405.45 |

5